# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 14, 2018

Lyle W. Cayce
Clerk

No. 16-30515

UNITED STATES OF AMERICA, on behalf of Administrator of
Environmental Protection Agency,

      Plaintiff - Appellee Cross-Appellant

v.

CITGO PETROLEUM CORPORATION,

      Defendant - Appellant Cross-Appellee

Appeals from the United States District Court
for the Western District of Louisiana
USDC No. 2:08-CV-893

Before DENNIS, CLEMENT, and GRAVES, Circuit Judges.

PER CURIAM:*

      This case stems from the spillage of wastewater into navigable waters at a CITGO plant in Lake Charles, Louisiana. CITGO has conceded liability and the only issue in this protracted litigation is the amount of the resulting civil penalty, which the district court has determined on two separate occasions.

---

      * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-30515

The parties appealed both. On first appeal, we vacated and remanded for further proceedings. Now, we AFFIRM.

## BACKGROUND

The underlying facts of this case are set out in our initial decision. *See United States ex rel. v. CITGO Petro. Corp.* ("*CITGO I*"), 723 F.3d 547, 549-50 (5th Cir. 2013). Pertinent to this appeal, CITGO conceded liability for the spillage of wastewater into navigable waters at a Louisiana plant. *Id.* After a two-week bench trial, the district court fined CITGO $6 million. *Id.* at 550. The United States appealed that penalty, arguing that the district court failed to make the necessary fact-finding on the economic benefit to CITGO of delaying necessary prevention measures. *Id.* at 551. We agreed, and remanded in order to make "a reasonable approximation" of the economic benefit to CITGO. *Id.*

On remand, the district court conducted a thorough analysis and concluded that CITGO realized an economic benefit of $91.7 million. *See United States v. Citgo Petro. Corp.*, Civ. Action No. 08-893, 2015 WL 9692957, at *6 (W.D. La. Dec. 23, 2015). In reaching that number, the district court considered the costs of CITGO providing a third and fourth waste water tank, an aeration filter, and an API separator. *Id.* at *5. The court then applied a rate of 10.04% weighted average cost of capital ("WACC") to those funds over a number of years. *Id.* at *6. Finally, after finding CITGO acted with gross negligence, the court considered all the remaining Clean Water Act ("CWA") penalty factors, ultimately deciding to depart downward from the economic benefit determination to impose a fine of $81 million. *Id.* at *7-8. Both parties timely appealed.

## STANDARD OF REVIEW

"The assessment of civil penalties under the CWA is left to the district court's discretion." *CITGO I,* 723 F.3d at 551. The exercise of that discretion is guided by the factors articulated in the CWA. *See id.* (citing 33 U.S.C.

No. 16-30515

§ 1321(b)(8)). The Supreme Court has described the process of weighing the penalty factors as "highly discretionary." *Tull v. United States*, 481 U.S. 412, 425 (1987). Accordingly, this court reviews the district court's WACC determination for abuse of discretion, *United States v. Allegheny Ludlum Corp.*, 366 F.3d 164, 184 (3d Cir. 2004), and factual findings in support of the penalty calculation for clear error, *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 573 (5th Cir. 1996).

## DISCUSSION

Both parties have appealed the district court's civil penalty. We address CITGO's arguments first before turning to the government's. None of the parties' arguments have merit and we affirm in full.

## I.    CITGO's Assertions

CITGO presents two arguments on appeal. First, CITGO claims that the district court failed to properly consider the least costly alternative to prevent the spillage. Second, CITGO claims the district court erred in applying a 10.04% WACC rate. Neither argument has merit.

### a.    Least Costly Alternative

The district court determined that the "least costly alternative would have been to provide adequate [storage] capacity." *Citgo Petro.*, 2015 WL 9692957, at *5. This determination is supported by the government expert's testimony that CITGO needed "more than 20 million gallons of additional water capacity." To meet that need, the court found that CITGO should have installed a third and fourth water tank, as well as an aeration tank and API separator. *Id.* CITGO contends this analysis was error because only a third storage tank was needed to prevent overflow.

According to CITGO, a third tank would have provided 10.7 million gallons of capacity, which, combined with the storage dike's 11.8 million gallons of capacity, would have provided sufficient storage to prevent overflow.

3

This calculation, however, is based on a scenario where "all tanks were operated at the minimum level and all conditions were perfect." There is ample record evidence that this best-case-scenario does not conform to the realities of running the plant.

The government's expert testified that a fourth tank was necessary "no matter what" because tanks must be taken out of service periodically for maintenance. Therefore, a fourth tank was mandatory in order to ensure that a third tank was always operational. Further, CITGO planned to use the dike's capacity to compensate for lost storage when a tank was taken out for maintenance. Because of these issues, even assuming that a third tank and the dike would mathematically provide sufficient storage, in reality, CITGO was not always "maintaining that reserve capacity."

Compounding these issues, CITGO "failed to maintain the limited capacity it had, allowing the tanks to fill with sludge and waste." *See Citgo Petro.*, 2015 WL 9692957, at *7. Accumulation of this debris was the result of inadequate filtration systems and led to the storage tanks having a functional storage capacity below the best-case-scenario capacity asserted on appeal by CITGO. To remedy this issue, the government's expert testified that CITGO needed a fifth API separator and another aeration tank.

In short, CITGO's argument is based on mathematical calculations of storage capacities at "optimum conditions." The district court credited the government's expert that such calculations are "disconnect[ed]" from the "real world" operation of the plant. There is no clear error in that determination.

### b.    The WACC Determination

CITGO next contends that the district court abused its discretion when it applied a 10.04% WACC to determine the present value of the economic benefit calculation. In CITGO's view, the 10.04% rate was not based on sound

methodology and was unreasonable because CITGO could have obtained the same funding at a much lower cost.

In essence, CITGO asks us to credit the testimony of CITGO's expert witness over the testimony of the government's expert. At trial, the government's financial expert testified at length regarding the reasons that a WACC rate of 10.04% should be used to calculate the present value of CITGO's avoided expenditure. CITGO's expert, of course, offered a contradicting analysis urging a rate far lower. CITGO urges us to accept their expert's rate on appeal. We decline to do so. When a district court is tasked with crediting battling experts, "the factfinder's choice between them cannot be clearly erroneous." *CITGO I*, 723 F.3d at 556 (quoting *Bertucci Contracting Corp. v. M/V ANTWERPEN*, 465 F.3d 254, 258 (5th Cir. 2006)).

## II.    The Government's Arguments

The government, for its part, also asserts two errors on appeal. First the government argues that the district court erred in departing downward from its economic benefit determination in imposing a penalty. Second, the government challenges the adequacy of the district court's explanation pertaining to the CWA penalty factors. Neither argument has merit.

### a.    The Downward Departure

The government first appeals the district court's grant of a below-economic-benefit penalty, arguing that the district court should have imposed a penalty equal to, or above, its economic benefit determination.

To the extent that the government believes that a CWA penalty should never depart downward from an economic benefit determination, we have recognized that in the "bottom up" approach district courts adjust a penalty "upward or downward" from the economic benefit calculation. *See CITGO I*, 723 F.3d at 552 (quoting *Allegheny Ludlum*, 366 F.3d at 178 n.6).

No. 16-30515

Here, the court employed the bottom up approach, but chose to depart downward from its $91.7 million economic benefit determination. The court presumably did so, at least in part, on its consideration of CITGO's $65 million effort to clean up the spill. *Compare United States v. Citgo Petro. Corp.*, Civ. Action 08-893, 2011 WL 13047364, at *3 (W.D. La. Sept. 29, 2011) (noting $65 million clean-up effort), *with Citgo Petro.*, 2015 WL 9692957, at *8 (leaving findings as to CITGO's clean-up efforts "unchanged"). The district court's $10 million downward departure in light of that fact is not an abuse of the district court's "highly discretionary" determination of the penalty. *See Tull*, 481 U.S. at 427.

**b.    The Adequacy of the District Court's Penalty Explanation**

The government next contends that the district court abused its discretion because it did not provide a sufficiently detailed explanation for its penalty award.

In accordance with our decision in *CITGO I*, the district court gave a detailed description of its economic benefit calculation, addressing the costs of each step CITGO should have taken, the time period underlying the economic benefit calculation, and the 10.04% rate it used to determine present value of those delayed expenditures. *See Citgo Petro.*, 2015 WL 9692957, at *5-6. Next, in finding that CITGO acted with gross negligence, the district court discussed the substantial evidence indicating CITGO's long-history of awareness that its storage systems were inadequate at the Lake Charles plant. *Id.* at *7-8. Finally, the district court considered the "remaining penalty factors," directly addressing in detail the level of seriousness of the violations, the degree of CITGO's culpability, CITGO's prior history of violations, CITGO's mitigation efforts, the impact of a penalty on CITGO, and any other interests of justice. *Id.* at *8-9.

6

No. 16-30515

There is no error in the district court's detailed and thorough calculation of the penalty in this case. Though the district court did not explicitly describe the exact effect each factor had in reaching the downward penalty calculation, it need not do so. The "calculation of discretionary penalties is not an exact science, and few courts could comply with [the government's] request that the importance of each factor be precisely delineated." *See United States v. Marine Shale Processors*, 81 F.3d 1329, 1338 (5th Cir. 1996).

## CONCLUSION

The district court did not commit clear error in its factual determinations. Nor did it abuse its discretion in calculating the $81 million penalty imposed against CITGO. Accordingly, we AFFIRM.

No. 16-30515

EDITH BROWN CLEMENT, Circuit Judge, Dissenting in part:

I concur in the majority's decision to affirm the district court's WACC determination, below-economic benefit penalty, and penalty explanation. However, for the reasons below, I dissent as to the majority's affirmance of the district court's least costly alternative analysis.

The majority's rejection of CITGO's "third tank only argument," finding that a third *and* fourth storage tank were necessary, is correct. However, the majority does exactly what I believe the district court incorrectly did—adopt the government's proposed least costly alternative in full without an individualized consideration. I would hold that the district court clearly erred in including the API separator and the aeration tank in the determination.

The only items that should be included in the least costly alternative analysis are the items that were necessary to prevent the charged violation. The record on appeal and the parties' briefs focus on CITGO's failure to have sufficient stormwater storage tank capacity and its failure to adequately maintain and clean the tanks, all of which undoubtedly led to the 2006 CWA violation. But, there is no basis in the record for the district court's inclusion— and this court's affirmance—of the API separator and the aeration tank. Neither the district court nor this court addresses how or why these two items were *necessary* to the prevention of CITGO's CWA violation, beyond their being good business practices.

Although it may have been good practice to have the API separator and the aeration tank, the record makes abundantly clear that CITGO needed only a third and fourth storage tank—that were cleaned and maintained—to prevent the CWA violation *in question*. Accordingly, I would vacate the judgment as to the inclusion of the API separator and the aeration tank. Further, because the cost of each item is unclear, I would remand for the district court to recalculate the economic benefit and adjust the civil penalty

as the district court deems appropriate with the guidance that this court does not find error as to its determination in any other respect.